# EXHIBIT A

Lon J. Dale, Esq.
Michael D. Bybee, Esq.
MILODRAGOVICH, DALE
& STEINBRENNER, P.C.
620 High Park Way
P.O. Box 4947
Missoula, Montana 59806-4947
Telephone: (406) 728-1455
Fax No: (406) 549-7077
lon@bigskylawyers.com
mbybee@bigskylawyers.com
*Attorneys for Plaintiff Daniel G. Rodoni*

FILED MAR 21 2018
SHIRLEY E. FAUST, CLERK
By_____ Deputy

MONTANA FOURTH JUDICIAL DISTRICT, MISSOULA COUNTY

DANIEL G. RODONI,

    Plaintiff,

-vs-

ROYAL OUTDOOR PRODUCTS, INC., WESTLAKE CHEMICAL CORPORATION, ROYAL GROUP INC., AXIALL CORPORATION, THE HOME DEPOT, INC., HOME DEPOT U.S.A., INC., and JOHN DOES 1 THROUGH 10,

    Defendants.

Cause No. DV-18-339
Dept No. 1 Leslie Halligan

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff Daniel G. Rodoni, by and through undersigned counsel, and for his Complaint, alleges as follows:

**PARTIES**

1. Plaintiff, DANIEL G. RODONI ("Rodoni"), is, and at all times relevant to this Complaint was, a citizen of the State of Montana, residing in Missoula County.

2. Defendant ROYAL OUTDOOR PRODUCTS, INC. ("ROYAL OUTDOOR") is, upon information and belief and at all times relevant to this Complaint was, a corporation organized and existing under the laws of the State of Indiana, with its principal place of business located in Atlanta, Georgia.

COMPLAINT AND DEMAND FOR JURY TRIAL - Page 1

3. Upon information and belief, Defendant ROYAL OUTDOOR is a division of Defendant ROYAL GROUP, INC. ("ROYAL GROUP"), a corporation organized under the laws of the Country of Canada, with its principal place of business located in Woodbridge, Ontario, Canada.

4. In approximately 2006, Georgia Gulf Corp. ("Georgia Gulf") acquired Defendant ROYAL GROUP through a stock acquisition. Georgia Gulf was a corporation organized under the laws of the State of Delaware, with its principal place of business located in Atlanta, Georgia.

5. In approximately 2013, Georgia Gulf merged with a wholly-owned subsidiary of PPG Industries, Inc. and became Defendant AXIALL CORPORATION ("AXIALL"), a corporation organized under the laws of the State of Delaware, with its principal place of business located in Houston, Texas.

6. Defendant AXIALL is a subsidiary of Defendant WESTLAKE CHEMICAL CORPORATION ("WESTLAKE"), a corporation organized under the laws of the State of Delaware, with its principal place of business located in Houston, Texas.

7. Defendant THE HOME DEPOT, INC. ("HOME DEPOT") is a corporation organized under the laws of the State of Delaware, with its principal place of business located in Atlanta, Georgia.

8. Defendant HOME DEPOT U.S.A., INC. ("HOME DEPOT USA") is, upon information and belief, a wholly owned subsidiary of HOME DEPOT, organized under the laws of the State of Delaware, with its principal place of business located in Atlanta, Georgia.

9. Defendants DOES ("DOES") 1 through 10 are divisions, subsidiaries, successor companies, or otherwise involved in the design, manufacture, or distribution of deck railing but are currently unknown to Plaintiff.

COMPLAINT AND DEMAND FOR JURY TRIAL - Page 2

## JURISDICTION AND VENUE

10. Venue is proper pursuant to Mont. Code Ann. § 25-2-121 and § 122 as Missoula County is where the contract performance occurred and where the tort occurred.

11. Jurisdiction is proper in Missoula County as it is where the tort occurred, and where Defendants conducted business, thus availing themselves to the privileges and protections of Montana law.

## GENERAL ALLEGATIONS

12. On April 4, 2015, Rodoni visited his cousin at his cousin's private residence located at 5004 Elk Hills Ct., Missoula, Montana.

13. Rodoni was socializing on a second-story balcony which was secured by deck railing.

14. The deck railing was designed and manufactured by ROYAL OUTDOOR.

15. ROYAL OUTDOOR was a division of ROYAL GROUP.

16. Upon information and belief, either ROYAL OUTDOOR or ROYAL GROUP distributed the deck railing to HOME DEPOT and/or HOME DEPOT USA for sale to the public.

17. The deck railing arrived at HOME DEPOT and/or HOME DEPOT USA in the same condition as when it left the care, custody and control of ROYAL GROUP and/or ROYAL OUTDOORS.

18. HOME DEPOT and/or HOME DEPOT USA sold the deck railing to Rodoni's cousin who installed the deck railing on his second-story balcony.

19. On April 4, 2015, when Rodoni was visiting his cousin, Rodoni gently leaned against the deck railing.

20. Immediately upon contact with the deck railing, the railing failed.

21. The failure caused Rodoni to fall approximately fifteen (15) feet onto pavement.

22. The impact on the pavement caused Rodoni to suffer compression fractures in this lumbar spine and a fracture in his foot.

23. Rodoni has faced other related and on-going medical issues due to the failure of the deck railing.

24. The deck railing was constructed of polyvinyl chloride (PVC).

25. The deck railing failed because ROYAL OUTDOORS utilized an adhesive to construct the deck railing which is incompatible with the type of PVC utilized in the construction of the deck railing.

26. Specifically, ROYAL OUTDOORS utilized an ester plasticizer to secure the vertical portions of the deck railing to the horizontal portions.

27. The use of the ester plasticizer as an adhesive caused the PVC to become brittle and susceptible to failure.

28. ROYAL OUTDOOR designed and manufactured the deck railing.

29. ROYAL OUTDOOR was a division of ROYAL GROUP.

30. In 2006, Georgia Gulf acquired all of the outstanding common stock of ROYAL GROUP.

31. In approximately 2006, Georgia Gulf began manufacturing vinyl-based products, such as the deck railing, under the ROYAL GROUP brand, which includes ROYAL OUTDOOR.

32. In approximately 2013, Georgia Gulf merged with another company and changed its name to AXIALL.

33. AXIALL manufactures vinyl-based products, such as the deck railing, under the ROYAL GROUP brands.

34. In approximately 2016, WESTLAKE acquired AXIALL, including its debts and liabilities.

35. Rodoni's damages as herein alleged were caused by the ROYAL OUTDOOR and the other named Defendants, and each of them are successors in interest, parent corporations, or companies under the WESTLAKE umbrella and are all legally responsible for Rodoni's damages.

## COUNT I
## (Product Liability - Strict Liability)
## Defendants ROYAL, ROYAL GROUP, AXIALL, and WESTLAKE

36. Rodoni re-alleges Paragraphs 1 through 35 above.

37. Defendants are divisions, subsidiaries, parent companies, or otherwise part of a vertically integrated business under the WESTLAKE umbrella.

38. Defendants controlled all aspects of production from raw materials, design, manufacture, and distribution of the deck railing.

39. Defendants are engaged in the business of producing and using PVC in the manufacture of various home-improvement products, including the deck railing at issue herein.

40. Defendants designed and manufactured the deck railing at issue herein.

41. Defendants placed the pre-manufactured deck railing at issue herein into the stream of commerce.

42. When the Defendants placed the completed deck railing into the stream of commerce, it was in a defective condition that was unreasonably dangerous to the user or consumer.

43. When the deck railing reached the end user or consumer, it was in the same condition as it was when it left Defendants' care, custody and control.

44. Defendants' design was defective and pre-destined to fail due to the use of ester plasticizer in the design and manufacture of the deck railing.

COMPLAINT AND DEMAND FOR JURY TRIAL - Page 5

45. The deck railing did fail and injured Rodoni.

46. Rodoni was injured while using the deck railing in a reasonable and foreseeable manner.

47. Rodoni suffered and continues to suffer damages in an amount to be proven at trial.

## COUNT II
### (Products Liability - Strict Liability)
### Defendants HOME DEPOT and HOME DEPOT USA

48. Rodoni re-alleges Paragraphs 1 through 47 above.

49. Defendants HOME DEPOT and HOME DEPOT USA are in the business of marketing and selling do-it-yourself home improvement products such as the deck railing at issue herein.

50. Defendants HOME DEPOT and HOME DEPOT USA sold the deck railing at issue herein in about 2006.

51. When Defendants HOME DEPOT and HOME DEPOT USA sold the deck railing, the deck railing was in a defective condition that was unreasonably dangerous to the user or consumer.

52. When Defendants HOME DEPOT and HOME DEPOT USA sold the deck railing, the deck railing was in the same or substantially the same condition as when it left the manufacturer.

53. Due to the defective and unreasonably dangerous condition of the deck railing, Rodoni sustained and continues to sustain serious injuries by his reasonable and foreseeable use of the deck railing.

54. Defendants HOME DEPOT and HOME DEPOT USA sold a defective and unreasonably dangerous deck railing that caused, and continues to cause, Rodoni damages in an amount to be proven at trial.

//
//
//

COMPLAINT AND DEMAND FOR JURY TRIAL - Page 6

## COUNT III
### (Products Liability - Strict Liability
### (Fictitious Defendants)
### Defendants DOES 1 through 10

55. Rodoni re-alleges Paragraphs 1 through 54 above.

56. Defendants DOES 1 through 10 are subsidiaries, parent companies, divisions, or entities currently unknown to Plaintiff who either designed, manufactured, marketed, distributed, tested, or otherwise contributed to the development of the deck railing at issue herein.

57. Defendants DOES 1 through 10 developed, marketed, designed and/or manufactured the deck railing such that it was in a defective condition unreasonably dangerous to the end consumer or user.

58. Defendants DOES 1 through 10 expected and intended the deck railing to reach the end consumer or user, such as Rodoni.

59. The defective and unreasonably dangerous deck railing did reach the end consumer or user, Rodoni, in the same or substantially the same condition as it was when manufactured.

60. The deck railing was defective and unreasonably dangerous and caused, and continues to cause, Rodoni damages in an amount to be proven at trial.

**WHEREFORE**, Plaintiff, DANIEL G. RODONI, prays for judgment against Defendants, and each of them, as follows:

1. Damages as permitted by law and determined by the fact finder;

2. For an award of past and future general and special damages, including past and future medical expenses;

3. For pain and suffering and loss of established course of life damages;

4. For loss of earning capacity and diminished work life damages;

COMPLAINT AND DEMAND FOR JURY TRIAL - Page 7

5. General damages allowable under Montana law according to proof;

6. For costs of suit herein incurred; and

7. For such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a Jury Trial.

DATED this 21st day of March, 2018.

MILODRAGOVICH, DALE
& STEINBRENNER, P.C.
*Attorneys for Plaintiff*

By: _____
Lon J. Dale

13701/2 (LJD:lhm)
L:\WDDOCS\DOCS\CLIENTFL\13701\002\CMP\00789201.WPD

COMPLAINT AND DEMAND FOR JURY TRIAL - Page 8