IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DANIEL RODONI, | CV 19–17–M–DLC |
| Plaintiff, | |
| v. | ORDER |
| ROYAL OUTDOOR PRODUCTS, INC., WESTLAKE CHEMICAL CORPORATION, ROYAL GROUP INC., AXIALL CORPORATION, THE HOME DEPOT, INC., U.S.A., INC., and JOHN DOES 1 THROUGH 10, | |
| Defendants. | |

Before the Court is Defendants' (Royal Outdoors, Royal Group, Westlake Chemical, and Axiall Corporation) Motion to Dismiss (Doc. 5) for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Plaintiff Daniel Rodoni contests only the dismissal of Royal Outdoors and Royal Group (collectively "Royal Defendants"). The Court will therefore grant the motion as to Defendants Westlake Chemical and Axiall Corporation without prejudice. For the reasons explained, the Court denies the motion as to Royal Defendants subject to renewal after jurisdictional discovery.

1

## Background

On April 4, 2015 Rodoni was socializing on his cousin's balcony when the railing gave way, causing him to fall from the second-story deck onto the pavement below. (Doc. 1-1 at 4–5.) Rodoni alleges that Royal Defendants designed the polyvinyl chloride railing using an incompatible adhesive which caused it to break. (*Id.* at 5.) The railing was designed outside of Montana but purchased within the State.[1]

## Standard of Review

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger*, 374 F.3d at 800 (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). The plaintiff's pleading and affidavits "need only make a prima facie showing of jurisdictional facts." *Id.* In circumstances where the jurisdictional question is complex or factually contested, a court may defer a final ruling until the parties complete discovery on the issue. *E.g.*, *Holland America Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 454 (9th Cir. 2007); *El-*

---

[1] Rodoni asserts that this railing was purchased at Home Depot in Missoula, Montana, and though Home Depot, who is not a party to this motion, disputes this allegation, for the Court's present purpose, it will take this fact as true. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) ("Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." (citing *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)).

2

*Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 670 (D.C. Cir. 1996), *abrogated on other grounds by Samantar v. Yousuf*, 560 U.S. 305 (2010); 4 Procedural Aspects of Personal Jurisdiction, 4 Fed. Prac. & Proc. Civ. § 1067.6 (4th ed. 2011).

**Discussion**

Personal jurisdiction is an individual liberty protected by the due process clause. *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). For a federal court to exercise personal jurisdiction over a nonresident defendant, two requirements must be met: jurisdiction must be proper under the state's long arm statute, and jurisdiction must satisfy the constitutional standard. Schwarzenegger, 374 F.3d at 800. Royal Defendants move to dismiss on both accounts. Only specific jurisdiction is at issue in this motion. (Doc. 7 at 7.)

### I. Montana's Long Arm Statute

Montana's long arm statute permits jurisdiction over any defendant who commits seven enumerated acts, including one who commits "any act resulting in accrual within Montana of a tort action." Mont. R. Civ. P. 4(b)(1)(B).

Royal Defendants argue that the alleged design defect did not "accrue" in Montana where the only "event [that occurred] in Montana was the injury to" Rodoni. (Doc. 6 at 9.) Royal Defendants cite *Tackett v. Duncan*, 334 P.3d 920 (Mont. 2014), as well as this Court's decision in *Ascencio v. Phillips Agency, Inc.*, No. CV 16-64-M-DLC, 2016 WL 9461796 (D. Mont. Aug. 16, 2016), for the

3

proposition that Montana law requires more than mere injury within the State to "establish accrual of a tort action" in satisfaction of its long arm statute. (*Id.* at 10.)

Rodoni, on the other hand, cites to *Bendure v. Star Targets*, No. CV-14-89-BLG-APW-CSO, 2016 WL 829912 (D. Mont. Mar. 1, 2016), and *Joss v. Bridgestone Corp.*, No. CV-08-68-BLG-RFC, 2009 WL 1323040 (D. Mont. May 11, 2009), to support his assertion that jurisdiction is proper under Montana's long arm statute when a design or manufacturing defect causes injury to a plaintiff within the State. (Doc. 7 at 7–8.) In response, Royal Defendants argue that *Bendure* and *Joss* are incompatible and therefore superseded by *Tackett* and *Acencio*. (Doc. 12 at 3, 5–7.) The Court disagrees.

First and foremost, a federal court interpreting Montana's long arm statute looks to the Montana Supreme Court's interpretation of it. In *Tackett*, the Montana plaintiff alleged that the defendant fraudulently induced him to wire money to Florida for an inspection of his Florida home. *Tackett*, 334 P.3d at 923–24. Reviewing the case under the same "accrual" provision, the Court determined that the allegedly fraudulent communication did not give rise to jurisdiction where the contract was intended to be performed entirely out of state, and where the only conduct that occurred within Montana was that the plaintiff learned of his injury there. *Id.* at 928. Similarly in *Ascencio*, the Montana plaintiff brought a defamation claim against an out-of-state company that conducted background

4

checks, arguing that she was harmed when the company informed a future-potential employer of her criminal record. 2016 WL 9461796, at *1. This Court determined that personal jurisdiction was not proper under Montana's long arm statute because the tort accrued in the location where the service was performed, not where the plaintiff felt her injury. *Id.* at *5. It stated, "to determine the place of accrual, Montana looks not to the location of the injury but to the location of the injury-causing event." *Id.* at *4.

Royal Defendants assume that, in the context of a design defect, the location of relevance (or the "injury causing event") occurs in the place where the product was designed. Not so. For not all defectively designed products will fail and cause injury to consumers. A plaintiff has no cause of action in strict products liability prior to her injury.

As explained by *Joss*, in the context of a design defect, the injury causing event occurs (and the tort "accrues") when the product injures the consumer. 2009 WL 1323040, at *7–8. In *Joss*, the deceased plaintiff alleged a design defect against a tire manufacturer after the front tire on his Ford pickup exploded and caused him to lose control of the vehicle. *Id.* at *2. The Court determined that the tort accrued in Montana at the time the tire exploded. *Id.* at *7. This makes sense because the moment of injury is also the moment that the product disappoints the consumer's reasonable safety expectations as a result of the "physical harm caused

by the defective product." *Malcolm v. Evenflo Co.*, 217 P.3d 514, 520 (Mont. 2009) (citing Mont. Code Ann. § 27–1–719; *McAlpine v. Rhone–Poulenc Ag Co.*, 16 P.3d 1054 (Mont. 2000)). Probing further, the court in *Joss* went on to explain that any alternate reading—for example, that "the tort accrued in Japan when Bridgestone manufactured the tire in question, years before the injury, or that the tort accrued in Japan at the time the tire was sold,"—to be legally indefensible. *Id.* at *7–8; *see also Bendure*, 2016 WL 829912. This outcome is consistent with Montana law. *See Bunch v. Lancair Intern., Inc.*, 202 P.3d 784, 795 (Mont. 2009) (holding that personal jurisdiction was established under Montana's tort accrual provision over a nonresident airplane-kit manufacturer when the allegedly defective airplane crashed in Montana killing the plaintiff).

Here, Rodoni's design defect claim "accrued" and the "injury causing event occurred" when Rodoni "gently leaned" against Royal Outdoor Products' railing, which failed and caused him to fall from a second-story balcony. (Doc. 1-1 at 4–5.) For this reason, personal jurisdiction is proper under Montana's long arm statute.

## II. Constitutional Basis

Royal Defendants argue that the Constitution prohibits this Court's exercise of personal jurisdiction because its sole act of placing a product into the "stream of commerce, without more," is not a valid basis under the due process clause. (Doc.

6 at 12 (quoting *Holland Am. Line Inc.*, 485 F.3d at 459).) Rodoni responds that personal jurisdiction is proper because Royal Defendants engaged in nationwide product distribution, consistent with *Joss*. (Doc. 7 at 8–11.) In the alternative, Rodoni asks for the opportunity to conduct jurisdictional discovery in order to "subpoena Royal Defendants' and Defendant Home Depot's customs broker(s) to ascertain who the importer of record for the defective railing is and to further subpoena the contracts between Royal Defendants and Defendants Home Depot." (Doc. 7 at 17.)

"For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted)). In the context of specific jurisdiction, the "minimum contacts" requirement is satisfied when the following criteria are met:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

7

*Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). Where the plaintiff meets the burden to show that the first two elements are satisfied, the burden shifts to the defendant to show that a court's exercise of jurisdiction would be unreasonable. *Id.*

In so-called stream-of-commerce cases, a plaintiff cannot satisfy the purposeful availment prong by merely showing that a defendant manufacturer "placed its product into the stream of commerce." *Holland Am. Line Inc.*, 485 F.3d at 459. "Even a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state." *Id.*

Where a manufacturer takes no affirmative action to send its products to a certain locale, either directly or through a distribution agreement, jurisdiction is not proper. *Id.* In *Holland America Line*, the Ninth Circuit found that the plaintiff (Holland America, a cruise ship company) could not hale the defendants (Wärtsilä, the Finnish parent company, and Wärtsilä Finland, the subsidiary and a manufacturer of marine engines) into federal court in Washington after the plaintiff's ship caught fire and sank during a voyage in Tahiti. *Id.* at 454, 459–60. The court first determined that Wärtsilä was not a manufacturer and had not placed any products into the stream of commerce, nor could the activities of its subsidiary

8

be imputed to it because "as a general rule, where a parent and a subsidiary are separate and distinct corporate entities, the presence of one . . . in a forum state may not be attributed to the other[.]" *Id.* at 459 (citing *Doe v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir. 2001).[2] Turning to Wärtsilä Finland (the manufacturer), the court noted that the record was void of any facts indicating that it had taken any specific action with respect to the forum above and beyond merely placing its products into the stream of commerce. *Id.* (citing *Asahi Metal Indus. Co. v. Super. Ct. of Calif., Solano Cty.*, 480 U.S. 102, 111 (1987)). The court noted that:

> Wärtsilä Finland sells no products directly into the United States. A marketing representative occasionally visits the United States to keep cruise lines informed of Wärtsilä Finland's propulsion system offerings, but none of these visits took place in Washington. Although Holland America alleges that Wärtsilä Finland "sends representatives to various industry trade shows in Washington," this allegation stems from a document demonstrating that employees of Wärtsilä NA may conduct marketing activities on behalf of Wärtsilä Finland, not that they actually do. Similarly, although Holland America alleges that Wärtsilä Finland conducts product training in the United States, the documents do not specify a location for this training.

---

[2] This is not to say that a subsidiary's activities may never be imputed to the parent company. *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023–25 (9th Cir. 2017) (noting that *Daimler AG v. Bauman*, 571 U.S. 117, 134 (2014) impliedly overruled the Ninth Circuit's prior agency test in the context of establishing specific jurisdiction but recognized that a different formulation of agency principles may still permit jurisdiction over a parent company when an agency relationship is formed between parent and subsidiary and the subsidiary's contacts satisfy jurisdiction).

*Id.* at 459–60. The court went on to reject the plaintiff's argument that merely maintaining a passive website which could be accessed in Washington was a sufficient contact. *Id.* at 460.

Rodoni points to *Joss* as an example of advertising and marketing conduct that constitute the "something more" needed to satisfy the purposeful availment/purposeful direction prong. (Doc. 7 at 9–11.) *Joss* reasoned that Bridgestone purposefully directed its activities at Montana insomuch as it "purposefully intended and directed its activities at every state in this country" through its ambitious goal "to become a truly global enterprise and to establish the Bridgestone brand as the undisputed world No, 1 brand." *Id.* at *1, *10. Royal Defendants argue that the Court should reject the conclusion reached in *Joss* because its reasoning was expressly rejected by the Supreme Court in *J. McIntyre Machinery v. Nicastro*, 564 U.S. 873 (2011) (plurality). However, the Court does not read *J. McIntyre* so broadly.[3]

In *J. McIntyre* a plaintiff brought a products liability suit against a metal shearing manufacturer. *Id.* at 877. The plaintiff was injured in New Jersey and sued J. McIntyre (an English company) in New Jersey. *Id.* The company did not market its products in New Jersey nor did it ship them to New Jersey. *Id.* at 878.

---

[3] Though *J. McIntyre* is a plurality opinion, the Ninth Circuit has found it consistent with prior precedent and therefore useful. *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 673 n.2 (9th Cir. 2012).

10

Rather, it sold to an independent company that transported the products to the United States. *Id.* And even though the company attended annual conventions in the states, its travel to these conventions never took its representative to New Jersey. *Id.* There was also evidence that no more than four machines had ever made it into New Jersey. *Id.* On these facts, the plurality determined that personal jurisdiction was not proper because there was no indication that the defendant engaged in conduct that "targeted" New Jersey. *Id.* at 886.

This is a fact-intensive question. *Id.* On one hand, "a defendant's placing goods into the stream of commerce 'with the expectation that they will be purchased by consumers within the forum State' may indicate purposeful availment" such as where "manufacturers or distributors 'seek to serve' a given State's market." *Id.* (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980)). However, merely being able to foresee that one's products might end up in a given state is insufficient. *Id.* at 882. In illustrating its point, the opinion provides the following example: where "a small Florida farm [sold] crops to a large nearby distributor . . .who . . . then distribute[d] them to grocers across the country," jurisdiction would not be appropriate in, say, Alaska, merely because the company could foresee the possibility that its produce might reach the state. *Id.* at 877.

*J. McIntyre* did not wholesale reject the notion that a corporation with a national presence cannot be haled into the forum state simply because the nonresident corporation conducts an aggressive advertising and marketing campaign in all fifty states, as Royal Defendant suggests. (Doc. 12 at 9.) Its reasoning is narrower: *J. McIntyre* rejected the theory that mere foreseeability, on its own, satisfies the purposeful direction requirement. When considering the contacts of a national corporation, the question is not whether the entity does considerable business across all states, but whether the entity took any action to "target" the specific state. *Moseley v. Suzuki Motor of Am., Inc.*, No. 1:17-CV-00230-DCN, 2018 WL 539330, at *2 (D. Idaho Jan. 24, 2018). It is conceivable that a national corporation with a national advertising presence might target or tailor its general advertising campaign to reach an audience within a certain state thereby exposing itself to jurisdiction.

For example, one could imagine a national purveyor of agricultural equipment that specifically increases its advertising efforts to boost sales in Montana after noticing that Montana farmers tend to prefer a different brand. Given the particulars, such a company's subsequent advertisements, shipments, and sales within the state could satisfy the purposeful direction prong where its mere presence in the national marketplace would otherwise not. *See J. McIntyre*, 564 U.S. at 886. Jurisdiction could also be proper where a nonresident defendant

uses an instate sales agent to advertise and market its products to residents of a certain state. *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 n.3 (9th Cir. 2017) (citing *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1197 (9th Cir. 1988)). "[A]nd it is the defendant, not the plaintiff, that . . . possesses most of the information necessary" to establish these facts. *Holland Am. Line Inc.*, 485 F.3d at 461.

Here, Rodoni alleges that Royal Defendants and Home Depot entered into a contract for "materials to be furnished in Montana." (Doc. 7 at 8 n.2.) Royal Groups 2005 Annual Information Form provides that it "typically enters into strategic joint venture arrangements with local partners in respect of its international operations." (*Id.*) Additionally, Royal Group's Annual Information describes the company as a "leading producer of innovative, attractive, durable and low-maintenance building and home improvement products for the North American marketplace." (Doc. 7 at 11.) And that "approximately 9% of Royal Group's overall sales come from" its home improvement line. (*Id.*) These facts, on their own, do not meet the necessary standard to show that Royal Defendants specifically targeted the Montana home-improvement market. However, given that the information necessary to establish jurisdiction is entirely controlled by Royal Defendants, the facts alleged by Rodoni offer a sufficient basis for the Court to infer that discovery is warranted. It may well be that Home Depot or "the importer

13

or record" acted with Royal Defendants in a "strategic joint venture" to sell its products to Montanans.[4] If a joint venture was created, Rodoni may be able to show that agency principles impute Home Depot's contacts to Royal Defendants. Alternatively, Rodoni may uncover facts that suggest that Royal Defendants specifically targeted Home Depot or other third-party distributors within Montana or solicited Montana clientele independently of its affiliation with any retailer. The Court will allow Rodoni the benefit of jurisdictional discovery.[5]

Accordingly, IT IS ORDERED that Defendants' motion (Doc. 5) is GRANTED in part and DENIED in part. The motion is granted as to Defendants Westlake Chemical and Axiall Corporation without prejudice. The motion is denied as to Defendants Royal Outdoors and Royal Group subject to renewal. Plaintiff shall be allowed to conduct jurisdictional discovery. The Court will issue a separate scheduling order.

DATED this 30th day of May, 2019.

Dana L. Christensen, Chief Judge
United States District Court

---

[4] Rodoni additionally points out that there seems to be "a sufficient commonality of interest" between Home Depot and Royal Defendants as illustrated by the fact that they share the same counsel in defense of this suit. (Doc. 8 at 17.)

[5] Because the Court has concluded that discovery is warranted in this matter, it will not address the parties arguments regarding the second or third prongs of the test at this time.

14